

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBRA BYRD-TOLSON,  )
 )
Plaintiff,  )
 ) Hon. Mark Filip
v.  )
 ) Case No. 06 C 3818
SUPERVALU, INC, a Delaware Corporation,  )
d/b/a SAV-A-LOT GROCERS and  )
SAV-A-LOT GROCERS of 7908  )
Halstead, Chicago, Illinois, and MORAN  )
FOODS INC., a Missouri Corporation,  )
 )
Defendants.  )

MEMORANDUM OPINION AND ORDER GRANTING
SUMMARY JUDGMENT MOTION OF DEFENDANT MORAN FOODS, INC.

On or about June 6, 2006, Plaintiff, Debra Byrd-Tolson ("Plaintiff"), an Illinois resident, filed suit against Supervalu, Inc. ("Supervalu") d/b/a "Sav-A-Lot Grocers" and "Sav-A-Lot Grocers of 7908 S. Halsted, Chicago, IL," based on injuries she allegedly suffered at a grocery store on June 6, 2004. (D.E. 1, Ex. A at 1.) Supervalu subsequently filed a notice of removal under 28 U.S.C. § 1441. (D.E. 1.)

In November 2006, Plaintiff was granted leave to file an amended complaint. (D.E. 23) In response, Supervalu filed a motion for summary judgment in which it averred, *inter alia*, that it did not own the supermarket referred to in the original complaint and did not have any activities concerning the operation of the grocery store in question on the date of Plaintiff's accident. (D.E. 24.) Thereafter, Plaintiff filed an amended complaint on February 6, 2007, in which Plaintiff voluntarily dismissed Supervalu as a defendant, and added Moran Foods, Inc.

("Moran"). (D.E. 43.) As a consequence, the Court struck as moot a motion by Supervalu to stay discovery pending resolution of the summary judgment motion (and to extend discovery thereafter, if necessary), and the Court also struck as moot the underlying summary judgment motion. (D.E. 40, 42.)

After being named as a party in the amended complaint, Moran filed a motion that it styled as a "motion to dismiss." (D.E. 50.) In conjunction with the "motion to dismiss," Moran also filed a statement of material facts pursuant to Local Rule 56.1, which is a local procedural rule that addresses the presentation of the record for summary judgment motions. (D.E. 51, 53.) Following a status hearing held in connection with the motion, the Court explained that the motion would be analyzed "and treated as a motion for summary judgment" pursuant to Fed. R. Civ. P. 56. (D.E. 56.) Briefing thereafter proceeded on that basis, with Plaintiff, for example, filing her own statement of material facts consistent with the Local Rule 56.1 framework. (D.E. 59.)

The Court has evaluated Moran's summary judgment motion. As explained below, the motion is granted for two independent reasons: (1) the suit against Moran was untimely; and (2) Plaintiff failed to adduce a triable case concerning substantive liability.

## RELEVANT FACTS[1]

This is a personal injury action that is in federal court pursuant to diversity of citizenship jurisdiction following removal from the Circuit Court of Cook County. The Plaintiff, Ms. Byrd-Tolson, is citizen and resident of Illinois. (D.E. 57, Ex. 1 (Pl. Rule 56.1 Resp.) ¶ 2 (concerning subject matter jurisdiction).) The Defendant, Moran Foods, Inc., is a Missouri corporation with

---

[1] The relevant facts are taken from the parties' Local Rule 56.1 submissions.

2

its principal place of business in Missouri. (D.E. 51 (Def. Rule 56.1 Statement) ¶ 3 (concerning subject matter jurisdiction.).)

I.     Plaintiff's Slip and Fall Incident

In this case, Plaintiff alleged injuries as a result of a slip and fall accident which occurred on June 6, 2004. (*See, e.g., id.* ¶¶ 2, 4.) Specifically, Plaintiff fell in Aisle Five of Defendant's grocery store in Chicago. (D.E. 57, Ex. 1 (Pl's Rule 56.1 Resp.) ¶¶ 3, 9.) Aisle Five of the store contained water, potatoes, and popcorn on one side, built-in coolers on the other, and low-slung coolers in the middle. (*Id.* ¶ 9.) A customer service counter was at the front of the aisle. (*Id.* ¶ 10.) Plaintiff stated that nothing was blocking her view as she walked down the aisle pulling a cart, and that the lighting was such that she had no problem seeing as she moved forward. (*Id.* ¶¶ 14, 16.) Plaintiff was about four feet from the frozen case when she fell, which was an equal distance from the opposite shelf on her right side. (*Id.* ¶ 12.) Plaintiff does not know of anyone who actually saw her fall. (*Id.* ¶ 15.) Plaintiff does not remember feeling anything under her feet at any point during the fall. (*Id.* ¶ 17.) When she was on the floor, Plaintiff recalled seeing smashed grapes. (*Id.* ¶ 23.) However, she did not see any grapes between her legs when she looked down, or any grapes behind her when she was on the ground, nor did she see any grapes in the area of her fall before the fall. (*Id.* ¶¶ 17-19.) Plaintiff contends that she fell on some grapes, but she does not know how long the grapes allegedly had been on the floor prior to her fall or how the grapes got on the floor. (*Id.* ¶¶ 20-21.) (Plaintiff also acknowledges that she cannot say whether a grape as opposed to something else on the floor caused her fall, but she does maintain that her fall was caused by a wet substance. (*Id.* ¶¶ 23-24.)) Plaintiff did not know where the wetness came from, who put it there, how long it had been there, or whether or

not people from the store knew about it. (*Id.* ¶¶ 21, 22, 24.)

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). The Court views the properly-presented record and all reasonable inferences drawn therefrom in the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56(c); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

This judicial district has well settled rules concerning the presentation and analysis of motions subject to Local Rule 56.1. Local Rule 56.1 ("L.R. 56.1") requires that statements of facts contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85

(N.D.Ill.2000). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *See, e.g., Malec,* 191 F.R.D. at 583 ("Factual allegations not properly supported by citation to the record are nullities."). The only appropriate way to present additional material factual allegations is through a counter-statement of material facts filed within the prescribed Local Rule 56.1 framework. *See, e.g., Knights v. Williams,* No. 02 C 5017, 2005 WL 1838427, at *2 (N.D.Ill. July 28, 2005) (collecting cases); *Malec,* 191 F.R.D. at 584 (L.R.56.1(b)(3)(B) statement is the only acceptable means of presenting additional facts to the Court). In addition, facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material, as that does not promote a reasoned process to air and evaluate the parties' respective positions concerning either: (a) whether there are disputed material facts in the record; or (b) evidentiary objections concerning such matters. *See, e.g., Malec,* 191 F.R.D. at 586; *accord, e.g., Madaffari v. Metrocall Cos. Group Policy GL,* No. 02 C 4201, 2005 WL 1458071, *1 (N.D.Ill. June 15, 2005) (St. Eve, J.) (citing, *inter alia, Solaia Tech. LLC v. ArvinMeritor, Inc.,* 361 F. Supp. 2d 797, 826 (N.D.Ill. 2005)). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon,* 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). As is standard in this district, the Court applies the Rule 56.1 framework and accompanying rules, particularly as both parties are represented.

## ANALYSIS

I.  Plaintiff's Claim is Barred By the Statute of Limitations

In its motion for summary judgment, Moran contends that the case must be dismissed because Plaintiff failed to commence it within the applicable statute of limitations. (D.E. 52 at 4.) The parties agree that the issue of the timeliness of the suit in this diversity action is controlled by Illinois law. (D.E. 50 ¶ 7; D.E. 52 at 1, 3; D.E. 57 ¶¶ 5-6.) Seventh Circuit precedent teaches that when the parties agree on the applicable choice of law, the district court may accept that stipulation. *See Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995); *accord, e.g.*, *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000). The Court accordingly analyzes the timeliness of the suit pursuant to Illinois law.

Under Illinois law, a personal injury claim must be commenced within two years after the cause of action accrued. 735 ILCS 5/13-202. In her original complaint, filed on June 6, 2006, Plaintiff named Supervalu, Inc., d/b/a Sav-A-Lot Grocers, and Sav-A-Lot Grocers as the defendants. (D.E. 1.) Plaintiff amended her complaint to name Moran as the defendant on February 6, 2007, which is, Defendant contends, eight months too late. (D.E. 43.)

In her response, Plaintiff, who is represented, advances three arguments. Plaintiff's response, which is charitably described as terse, states the following:

> First, Plaintiff states that "the Original Complaint was timely filed on June 6, 2006 and named Defendant Moran Foods by naming the store and location under which Moran Foods was doing business in the State of Illinois, namely 'SAV-A-LOT GROCERS of 7908 S. Halsted, Chicago, Illinois.' [see Plaintiff's Exhibit 1]" (D.E. 57 at 2.)
>
> Second, Plaintiff states that, "[a]pplying Illinois law this Honorable Court must consider 735 ILCS 5/2-401(b) which reads in principal part 'Misnomer of a party is not grounds for dismissal, but the name of any party may be corrected at any time . . .'" (*Id.*)

6

And, third, Plaintiff suggests that Fed. R. Civ. P. 17(a) may be germane. (*Id.* at 3.) As Plaintiff notes, Fed. R. Civ. P. 17(a) states, "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest."

Plaintiff cites no cases of any kind in support of any of the three arguments.

The Court has evaluated the three arguments presented by Plaintiff's counsel. With all respect, none is persuasive. Accordingly, the Court finds that Plaintiff's suit is subject to dismissal on the first ground advanced by Moran—*i.e.*, that the suit was not timely filed against it.

The Court begins with Plaintiff's reference to 735 ILCS 5/2-401(b), as it at least cites a provision of Illinois law. In this regard, Plaintiff states simply that the Court "must consider 735 ILCS 5/2-401(b) which reads in principal part 'Misnomer of a party is not grounds for dismissal, but the name of any party may be corrected at any time . . .'" (D.E. 57 at 2.)

This argument is quite cursory—perhaps even cursory enough that it fails to sufficiently present the issue. *See, e.g., United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (holding that "perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)"). That is particularly true given that Plaintiff is represented by counsel. *See, e.g., Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) ("This court has no duty to research and construct legal arguments available to a party, especially when [s]he is represented by counsel.") (internal quotation omitted); *id.* at 465 (explaining that a court "is not equipped to act as auxiliary lawyer for a party," particularly a represented party); *accord, e.g., LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921-22 (7th Cir. 1997) (collecting cases).

The Court will resolve this issue charitably to Plaintiff, and finds that the question of

7

whether misnomer under 735 ILCS 5/2-401(b) saves Plaintiff's suit is adequately presented. Nonetheless, Plaintiff cites no caselaw authority in support of the conclusion that this statutory provision saves her suit, and the Court's own independent research does not support a result in Plaintiff's favor.

Illinois precedent teaches that the Illinois misnomer rule is a narrow one and is applied only where a plaintiff brings an action and a summons is served upon a party intended to be made a defendant. *See, e.g., Zito v. Gonzalez*, 683 N.E.2d 1280, 1283 (Ill. App. Ct. 1997) (stating that the Illinois "misnomer rule is a narrow one"). In this regard, *Zito* collected extensive Illinois caselaw and articulated the operative principles of Illinois law. More specifically, it taught that, under Illinois law:

> The pivotal inquiry in dealing with an issue of misnomer is whom did the plaintiff intend to sue. . . . [T]his determination is not controlled by the plaintiff's subjective intention of whom he intended to sue, but rather by the objective manifestations of that intent as contained in the record. The most probative evidence of whom the plaintiff intended to sue is the party named in the [initial] complaint. If the named party in fact exists, but is not a real party in interest, a court can conclude that the plaintiff has mistakenly sued the wrong party.

*Id.*, 683 N.E.2d at 1283 (collecting cases; internal citations omitted). Where an instance of mistake, as opposed to misnomer, occurs, the suit is untimely where the proper defendant has not been named and served within the limitations period. *See id.* at 1286; *accord, e.g., Athmer v. C.E.I. Equipment Co., Inc.*, 121 F.3d 294, 296 (7th Cir. 1997) (applying Illinois law). In this case, the party actually named during the limitations period, Supervalu, Inc. d/b/a SAV-A-LOT Grocers, does in fact exist: it is a Delaware corporation with its principal place of business in Minnesota. (D.E. 1 ¶ 2; D.E. 1, Ex. A at 1 ¶ 2.) As a result, Plaintiff simply named an incorrect party, and the Illinois misnomer statute does not afford her relief. *See Zito*, 683 N.E.2d at 1283;

8

*Athmer*, 121 F.3d at 296; *see also Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 235 (7th Cir. 1996) (rejecting plaintiff's contention that it should have been understood to have intended to sue whatever relevant defendant was the legal entity responsible for the articulated tortious misconduct, and stating: "We do not believe that such general descriptive language in a complaint is sufficient evidence of whom the plaintiff intended to sue. It merely begs the question for a plaintiff to contend that he intended to sue the party who caused his injuries. While the plaintiff in this case may have intended to sue the party who caused her injuries, she did not do so.") (internal quotation marks and citations omitted).

The Court therefore proceeds to Plaintiff's next contention—*i.e.*, that the suit should be regarded as timely simply because Plaintiff "nam[ed] the store and location under which Moran Foods was doing business in the State of Illinois, namely 'SAV-A-LOT GROCERS of 7908 S. Halsted, Chicago, Illinois.'" (D.E. 57 at 2.) Plaintiff cites absolutely no authority—statutory or caselaw—in support of this argument. Although the Court gave Plaintiff the benefit of the doubt about whether she had sufficiently presented her misnomer contention, her skeletal argument about the "doing business as" designation is simply inadequate to present an argument in an adversarial system of justice that depends on parties and their counsel (again, Plaintiff is represented) to marshal supporting authorities and present their arguments to a neutral adjudicator. *Accord, e.g., Berkowitz*, 927 F.2d at 1384. The Court considers this "doing business as" contention waived.[2]

---

[2] Moreover, although the Court has not exhaustively researched the substantive viability *vel non* of this waived argument, the Court's initial research reflects that it is not correct. For example, in *Hoving v. Davies*, 512 N.E.2d 729 (Ill. App. Ct. 1987), an injured patron of a bar was mistaken about the identity of the owner and operator of the bar. He sued "Barbara Davies and John Davies, individually and doing business as the Villa Marie East," instead of the real defendant-party, "John A. Davies, a

9

Third, Fed. R. Civ. P. 17(a) is of no assistance to Plaintiff. First, Plaintiff (as well as Defendant) expressly stipulated that the timeliness of the suit should be evaluated pursuant to Illinois law. *See* D.E. 57 at 2 (Plaintiff stating that, "[i]n paragraph 6 of its Motion to Dismiss, Defendant Moran Foods alleges that this United States District Court is to apply the Substantive Law of Illinois in ruling on Statute of Limitations issues raised in this case; Plaintiff agrees."). Therefore, this argument appears waived.

In any event, even if the argument had been properly raised, Fed. R. Civ. P. 17(a) is not apposite. That rule states that, "[e]very action shall be prosecuted in the name of the real party in interest." *Id.* The rule concerns the identity of the plaintiff (or counter-claimant) in a case, not the identity of a putative defendant. *See, e.g., Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (teaching that "[t]he real party in interest is the person holding the substantive right to be enforced, and not necessarily the person who will ultimately benefit from the recovery. The purpose of this provision is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right.") (internal citations and quotation marks omitted); *United Healthcare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996) ("This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced. Such a requirement is in place to protect the defendant against a subsequent action by the party actually entitled to

---

corporation," which owned and operated the Villa Marie East. *Id.* at 731. The Illinois Appellate Court found that the Illinois misnomer statute did not operate to save the claim from being untimely. *See id.* (holding that the patron "did not merely misname the right party, but named the wrong party."). As a result, Plaintiff's misnomer contention was "without merit" (*id.*), and the suit was properly dismissed as time-barred. *Id.* at 734.

recover, and to insure generally that the judgment will have its proper effect as res judicata.") (internal citations and quotation marks omitted). As with the rest of her motion, Plaintiff cites no caselaw in support of her argument. Plaintiff is represented, and it is not the Court's role to construct arguments for her that her attorney has not presented. *Accord, e.g., Tyler*, 70 F.3d at 466; *LINC Fin. Corp.*, 129 F.3d at 921-22; *Berkowitz*, 927 F.2d at 1384.

As a result, none of Plaintiff's arguments warrants an exemption from the limitations bar that otherwise appears to exist as presented by the Defendant's straightforward untimeliness argument. The suit therefore is subject to dismissal at the threshold as untimely.[3]

II. Plaintiff's Claim Independently Fails Because She Has Not Provided Any Evidence That Moran Had Actual or Constructive Notice of the Condition That Caused Her Fall

Even if the suit against Moran had been timely, Plaintiff's suit independently would be subject to dismissal. That result adheres because Plaintiff has failed to adduce a triable case on the question of Moran's substantive liability under Illinois tort law for Plaintiff's injury.

As before, the parties agree that Illinois tort law governs Plaintiff's claim that Defendant negligently maintained its business premises. (D.E. 57 ¶ 5.) The Court accepts this choice-of-law formulation of the parties—*accord, e.g., Harter*, 220 F.3d at 559 n.13; *Vukadinovich*, 59 F.3d at 62 (collecting cases)—which appears to be clearly correct in any event.

With regard to the question of substantive liability *vel non* under Illinois law, Moran

---

[3] In assessing the timeliness of the suit, the Court has evaluated each of the Plaintiff's proffered arguments and has not speculated about whether other, unraised doctrines might apply. The Court has taken that course because it is consistent with precedent, *Athmer v. C.E.I. Equipment Co., Inc.*, 121 F.3d 294, 296 ("We could stop there, because while there are other potentially relevant defenses to the statute of limitations the plaintiff does not mention any."). The Court also takes that course because most issues concerning exceptions to statutes of limitation involve various required showings concerning particular factual and legal issues. The Court cannot fairly speculate about how the record might intersect with those (unidentified) prerequisites, as they are not addressed in Plaintiff's filings.

11

argues that Plaintiff "has provided no competent evidence (1) that . . . [Moran] caused a condition or had notice of it prior to the accident, or (2) that any such condition caused her fall." (D.E. 52 at 5.) Plaintiff, who is represented, offers virtually no argument in response. (D.E. 57 ¶ 8.) Nor does Plaintiff discuss any of the numerous cases cited by Moran, or offer any cases of her own. (*Id.*) As explained below, the Court respectfully finds Plaintiff's barebones response inadequate to forestall summary judgment against her. *Accord, e.g., Celotex*, 477 U.S. at 322.

As the owner of the supermarket, under Illinois law Moran owes business invitees the duty to maintain the premises in a reasonably safe condition to avoid injuring them. *See Thompson v. Economy Super Markets, Inc.*, 581 N.E.2d 885, 888 (Ill. App. Ct. 1991). In this regard, Illinois law is clear, and has repeatedly emphasized, that a business owner is not an insurer of the safety of its premises, and that a triable case of negligence must be adduced or else judgment is required for the defendant. *See, e.g., Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 668 (Ill. App. Ct. 2000) (citing *Olinger v. Great Atlantic and Pacific Tea Co.*, 173 N.E.2d 443, 446 (Ill. 1961), and affirming grant of summary judgment for defendant); *Olinger*, 173 N.E.2d at 446 (stating that, "[w]e firmly adhere to the rule that a storekeeper is not the insurer of his customer's safety," and reversing jury verdict for plaintiff where there was insufficient proof of negligence by store owner).

Liability can be imposed on a business when its invitee is injured by slipping on a foreign substance on its premises if "(1) the substance was placed there by the negligence of the proprietor or (2) his servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e. the proprietor had constructive notice of the substance." *Hayes v. Bailey*, 400 N.E.2d 544,

546 (Ill. App. Ct. 1980); *accord Tomczak*, 735 N.E.2d at 667. In other words, Plaintiff must establish that Moran had actual or constructive notice of the dangerous condition that caused her fall and alleged damages. *Hayes*, 400 N.E.2d at 546.

Plaintiff identifies no evidence whatsoever that the substance that allegedly caused her fall was placed there by a store employee, or that any such employees were aware of the substance. Therefore she has no evidence of actual notice on the part of Moran. Indeed, she offers no argument to that effect.

Instead, Plaintiff simply notes (without any citation to her Rule 56.1 statement at all) that she has "identified the location of the store's service counter in plain view of the location of the fall." (D.E. 57 ¶ 8.) Although the Court is not required to hunt through unreferenced portions of a Rule 56.1 statement to evaluate arguments, the Court has done so in this respect, and in this regard, Plaintiff's Rule 56.1 statement, and the testimony upon which it relies, states only that "the Customer Service Counter was at the front of the Aisle in which the slip and fall occurred." (D.E. 57, Ex. 1 (Pl's L.R. 56.1 Resp.) ¶ 10.) As Moran notes, Plaintiff concedes that she did not see any store employees in the area before her fall. (*Id.* ¶ 13). Plaintiff does not know how the grapes got to the floor, or "who put the grapes on the floor (a customer, a child)." (*Id.* ¶¶ 21-22.) Plaintiff also concedes that she has no idea how long the substance that allegedly caused her fall—*i.e.*, some grapes or undefined wetness—was on the floor for purposes of the constructive notice/negligence analysis. (*Id.* ¶ 20.)

Illinois caselaw is clear that, under such circumstances, a plaintiff does not have a triable negligence case against a storeowner. *See, e.g., Tomczak*, 735 N.E.2d at 668 (affirming grant of summary judgment and stating, "the time element to establish constructive notice is a material

factor and . . . [it is] incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor of the establishment."); *id.* ("There is no evidence that anyone . . . knew how long this puddle of water was present. Under these circumstances, liability cannot be imposed upon the owner for the presence of a substance that no one had knowledge of immediately prior to the occurrence. To do so would be to make the owner the insurer of the safety of the plaintiff."); *Hayes*, 400 N.E.2d at 547 (holding that where there was no evidence of how long water had been on floor, "the trial judge was correct in directing a verdict for the defendant."); *Olinger*, 173 N.E.2d at 446 ("[E]ven where there is proof that the foreign substance was related to the defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, defendant is entitled to a directed verdict, such evidence being insufficient to support the necessary inference.") (collecting cases). Caselaw from other jurisdictions applying the same rules of liability is in accord. *See, e.g., Benware v. Big V Supermarkets, Inc.*, 576 N.Y.S.2d 461, 463 (N.Y. App. Div. 1991) (stating that "the fact that certain of the defendant's employees were stationed near the site of the accident does not suffice to establish constructive notice," and affirming grant summary judgment for defendant where "plaintiff testified that she did not see the substance prior to her fall, and no evidence was offered as to how the spill occurred or how long it had existed prior to the accident") (collecting cases); *accord Strowman v. Great Atl. and Pac. Tea Co.*, 675 N.Y.S.2d 82, 83 (N.Y. App. Div. 1998); *Gillespie v. Wal-Mart Stores, Inc*, 394 S.E.2d 24, 25 (S.C. Ct. App. 1990) ("The mere fact that water was on the floor of the store and was within the field of vision of a nearby store employee at the time . . . [the plaintiff] slipped upon it is not by itself enough evidence to charge . . . [the defendant] with negligence.")

(collecting cases).

Since Plaintiff has not provided any evidence that any store employees were aware of the substance she slipped on, she has not demonstrated actual notice. *See Erkol v. Marshall Field & Co.*, No. 88 C 1171, 1989 WL 18248, at *2 (N.D. Ill. Mar. 1, 1989) (actual notice cannot be found where "[t]here is no evidence that defendant or any of its employees were responsible for or knew of the existence of a foreign substance"). Moreover, she has not made any showing of how long one could reasonably infer the substance was on the floor, so as to ground a triable case of constructive notice. Again, under such circumstances, Illinois law, as cited above, directs a judgment in favor of Defendant as opposed to an invitation to a jury to simply speculate about how long the grapes allegedly were on the floor and whether there would be any legitimate basis to conclude that Defendant's employees should have become aware of them. *Accord, e.g., Hayes*, 400 N.E.2d at 546 (holding that, in a slip and fall case, "it is incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor."); *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 680 (Ill. App. Ct. 1980) (plaintiff's testimony that for ten minutes no other customer was present in the area of the store where she slipped on gob of spit "was an insufficient period of time to give constructive notice to the operator of this self service store of the presence of the foreign substance," where there "is no evidence that any other customer or store employee had discovered or walked through the foreign substance"); *Dunlap v. Marshall Field & Co.*, 327 N.E.2d 16, 20 (Ill. App. Ct. 1975) (where plaintiff slipped and fell on lollipop in defendant's store, no constructive notice shown since "the sole evidence tending to show that the candy stick had remained on the floor for a considerable length of time was its flattened and dirty condition").

15

Before concluding, the Court notes that it would not have required much for Plaintiff to have forestalled summary judgment on this basis. Numerous evidentiary avenues may have been available by which the Plaintiff could have given some basis to reasonably conclude, taking all possible inferences in her favor, that Defendant was negligent concerning the maintenance of the store. For example, Plaintiff may have been able to show that there frequently were slippery items on the floor of the store, such that the owner should have had people diligently policing the aisles. Or perhaps Plaintiff could have simply shown that some meaningful number of falls had occurred at the store, which similarly might have been the basis to infer some basis for negligence in maintaining and policing the aisles. Or perhaps Plaintiff could have made some showing that an employee or employees were generally stationed at the "customer service desk," and that part of their responsibilities included walking the aisles to help customers or perform clean-up duties generally. Plaintiff has done none of these things.[4] Nor has Plaintiff filed any request for additional discovery pursuant to Fed. R. Civ. P. 56(f).

The Court does not necessarily suggest the Plaintiff was remiss in not addressing such subjects in her briefs or in failing to file a Rule 56(f) motion so as to allow Plaintiff to pursue more discovery. Trial courts generally do not have access to discovery materials—for all the Court knows, Plaintiff explored such issues and received unfavorable answers. That general lack of access to the discovery record is one of the principal reasons why trial courts generally enforce the Local Rule 56.1 framework: it affords both sides a full and fair chance to present their views

---

[4] Plaintiff not only does not address whether any employee was actually stationed at the customer service desk, she does not even suggest that any employee was in the area during the time of her fall. *Accord* D.E. 57, Ex. 1 (Pl's L.R. 56.1 Resp.) ¶ 13 (Plaintiff conceding that "[s]he did not see anyone . . . in the area of her fall before the fall occurred, nor did she see anyone stocking in the area of her fall before her fall occurred.").

16

of the factual record, and there is no reasonable way for a Court to reliably speculate about what else—favorable or unfavorable—exists in the discovery record that is not properly presented.[5]

In an abundance of caution, the Court has independently reviewed the raw discovery materials presented but not properly referenced in connection with the Local Rule 56.1 statements. In relevant part, this record consists of the entire deposition of Plaintiff. The Court appreciates that it is not the Court's place to abandon its neutral role and become a shadow counsel for a represented plaintiff, but the Court notes that Plaintiff's deposition offers no further suggestion as to why summary judgment should not be entered against Plaintiff under Illinois substantive law. In her deposition, Plaintiff acknowledges that she does not even know if anyone had slipped, much less fallen, in the grocery store in the two years prior to her fall. (Pl. Dep. at 85.) Even if the Court were inclined to disregard the Local Rule 56.1 requirements—which the Court is not, as it would deprive Moran of its ability to respond to putative factual materials and/or raise objections to them—there is nothing in the evidentiary materials available to the Court that suggests that there is a triable case on constructive or actual notice under Illinois law.[6]

---

[5] Although likely not the situation in the instant case, it is not uncommon for discovery records in cases to fill entire conference rooms. Sometimes, the record can fill entire warehouse areas, although the advent of document CDs and other document imaging techniques over the last ten or fifteen years has made the "document warehouse" something a relic of the recent past. In any event, discovery records often consist of extraordinary amounts of documents, depositions, and other evidentiary materials. Trial courts cannot reasonably and reliably speculate about what is in such records and therefore instead analyze the product of the adversarial litigation process that is presented through the lens of the Local Rule 56.1 framework.

[6] In reviewing the deposition, the Court notes that Plaintiff's barebones approach to her summary judgment response may well have been a reasonable assessment of the risk-reward potential of the case. At the outset, there was, at a minimum, a very serious threshold issue concerning whether Plaintiff's suit was timely at all. In addition, even if the suit had been found timely (which it was not), it appears that Plaintiff faced substantial issues concerning proof of substantial damages. Most of her medical bills, if not all, appear to have been paid for by Medicaid. (*See* Pl. Dep. at 136 (Q: "Have the medical bills been sent to you, or have they been handled by a government agency, for example? You

Under such circumstances, summary judgment is independently warranted on the basis that Plaintiff has failed to present a triable negligence case within the parameters required by Local Rule 56.1. *Accord, e.g., Celotex*, 477 U.S. at 322.[7]

CONCLUSION

For the two adequate and independent reasons stated above, Defendant's motion for summary judgment is granted.

So ordered.

*/s/ Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Date: 6/12/07

---

know, by Medicaid or something like that." A: Medicaid.").) Similarly, it appears that Plaintiff has no reported income for the last several years before the fall, notwithstanding that she is a relatively young woman. (*See, e.g., id.* at 73.) (Plaintiff initially suggested that she might earn some cash "gifts" for musical performances at her church (*id.* at 78-79), but when asked whether she reported any such monies on her tax returns, she then repeatedly maintained that she actually had not received any such monies, at least during the two years before and after the accident. (*See id.* at 79 (Q: "The answer then would be . . . no, you didn't report them on your taxes; that would be correct?" A: "Yes." Q: "Okay. How much on an annual basis in 2002 and 2003 did you get from these gifts?" A: "Zero." Q: "In 2002 and 2003 you got no money for gifts? A: "No money for gifts."); *see also id.* at 80 (Q: "Miss Tolson . . . in 2002, 2003, did you make any income from anything –" A: "No.").) In any event, regardless of what motivated Plaintiff and her counsel to file a virtually nonexistent summary judgment response concerning the question of whether there is a triable negligence case here, it is well-settled that Plaintiff has the burden of showing such a case under Illinois law—*see, e.g., Tomzak v. Planetsphere, Inc.*, 735 N.E.2d 662, 667-68 (Ill. App. Ct. 2000) (reviewing Illinois Supreme Court and intermediate appellate authority); *Hayes v. Bailey*, 400 N.E.2d 544, 547 (Ill. App. Ct. 1980)—and, having failed to adduce such a case, summary judgment is appropriate against her on such basis. *See Tomczak*, 735 N.E.2d at 668; *Hayes*, 400 N.E.2d at 546-47; *accord, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[7] Moran offers further arguments as to why Plaintiff's claim fails under Illinois tort law. Because Plaintiff has failed to make a colorable showing that Moran was or should have been on notice of the alleged slippery substance on the floor, the Court need not reach those arguments.